78  597
97  517
78  597
144  617
d144 618

# Louisville & Nashville Railroad Co. v. Meyer.

*Action against Railroad Company as Common Carrier.*

1. *Demand; when unnecessary.*—A demand and refusal being only a method of proving a default, and the law not requiring a useless thing, an action may be maintained against a carrier for the loss of goods, without proof of a demand at the place of destination, when the evidence shows that the goods never reached that place.

2. *Liability of carrier for goods consigned beyond terminus of his route.* When a common carrier receives goods consigned to a place beyond the terminus of his own line, and does not limit his liability by express contract, he assumes the duty and obligation to deliver them safely at the place of destination, and is liable for a loss occurring on any part of the route.

3. *Same; limitation of liability by express stipulation.*—The carrier may, by express contract, limit his liability to losses or damage occurring on his own route; but such limitation must be shown to have been brought to the· notice of the consignor, and to have been accepted by or acquiesced in by him.

4. *Same.*—If the consignor, contemporaneously with the delivery of the goods to the carrier, receives a bill of lading limiting the liability of the carrier to losses occurring on his own route, "possibly he would be conclusively presumed to have read it, and to have acquiesced in it;" but this principle does not apply, where it is shown that the carrier, receiving the freight for the entire route, made out a bill of lading, which, being incomplete as to the amount of the charges, was not delivered to the consignor at the time, but was afterwards forwarded to him by mail at the place of destination.

[Louisville & Nashville Railroad Co. v. Meyer.]

APPEAL from the Circuit Court of Cullman.

Tried before the Hon. JAMES AIKEN.

This action was brought by Henry Meyer, against the appellant corporation, as a common carrier, to recover damages for the loss of certain goods delivered by him to the defendant, at Cullman, to be carried and delivered to him at Bluffton, in Indiana. On the evidence adduced, the defendant requested seven charges in writing to the jury, each of which the court refused to give. The defendant duly excepted to the refusal of these charges, and the several assignments of error are based on their refusal. The opinion states the material facts.

GEO. H. PARKER, for the appellant.—(1.) A common carrier may limit his liability to losses occurring on his own route, when goods are consigned to a point beyond his terminus.—*M. & G. Railroad Co. v. Copeland*, 63 Ala. 221; *S. & N. Ala. Railroad Co. v. Wood*, 71 Ala. 215; *M. & E. Railroad Co. v. Culver*, 75 Ala. 594; Hutchinson on Carriers, §§ 237–8, 240; Angell on Carriers, §§ 220, 233, 237. (2.) The bill of lading contained an express .stipulation so limiting the defendant's liability, and the plaintiff can not be heard to say that he did not read it, when he had an opportunity to do so. *Goetter, Weil & Co. v. Pickett*, 61 Ala. 390; *Dawson v. Burrus & Williams*, 73 Ala. 113. Printed forms are necessary for the dispatch of business, and the carrier's agents can not be required to explain and call the attention of the shipper to each stipulation in a bill of lading.

H. L. WATLINGTON, *contra.*—A common carrier, receiving goods for transportation beyond the terminus of his own route, is responsible for their loss, though it occurred beyond its terminus, in the absence of an express stipulation to the contrary. *Ill. Cent. R. R. Co. v. Copeland*, 24 Ill. 332; *Ill. Cent. R. R. Co. v. Johnson*, 34 Ill. 389; *Noyes v. R. & B. R. R. Co.*, 27 Vt. 110; *Mosher v. So. Express Co.*, 38 Ga. 37; *So. Express Co. v. Shea*, 38 Ga. 519; *Bennett v. Filyon*, 1 Fla. 403; *Angle v. M. & M. Railroad Co.*, 9 Iowa, 487; *Muschamp v. L. & P. Railway*, 8 Mees. & W. 421; *M. & G. Railroad Co. v. Copeland*, 63 Ala. 219; *Lotspeich v. Cent. R. R. & B. Co.*, 73 Ala. 206; *Little v. Semple*, 8 Mo. 99; *Hill Man. Co. v. B. & L. R. R. Co.*, 104 Mass. 122, or 6 Amer. Rep. 202; *Railroad Co. v. Pratt*, 22 Wall. 123; 45 N. Y. 524. Having charged and collected freight for the whole route, the defendant is liable for a loss on any part of the route.—19 Wend. 534; 17 N. Y. 315; 24 N. Y. 269; 18 Penn. St. 224; 21 Wisc. 582; 31 Cal. 52; 4 Sneed, 203; 48 N. H. 339; 23 Vt. 110; 47 Maine, 573; 2 Parsons' Contracts, 212, 218; 2 Redf. Rail-

[Louisville & Nashville Railroad Co. v. Meyer.]

way Cases, 280, 318. To limit this liability by special contract, as attempted here, the defendant must show that plaintiff had notice of the stipulation in the bill of lading, and accepted it. There can be no implied assent to an express contract. Angell on Carriers, § 242; *Cole v. Goodwyn*, 32 Amer. Dec. 501, notes; *So. Express Co. v. Crook*, 44 Ala. 468; *So. Express Co. v. Armistead*, 50 Ala. 350; *Grey's Ex. v. Mob. Trade Co.*, 56 Ala. 399; 56 Amer. Dec. 68; *Hollister v. Nowlin*, 32 Amer. Dec. 468; *Railroad Co. v. Reynolds*, 17 Kans. 251; *Gaines v. Transportation Co.*, 28 Ohio, 418; 16 Wall. 318; *Steam Nav. Co. v. Bank*, 6 How. 344; *Railroad Co. v. Lockwood*, 17 Wall. 357; *Jones v. Voorhees*, 10 Ohio, 145; 39 Miss. 822; 42 Mo. 91.

STONE, C. J.—The appellant railroad company received, at one of its depots, a package of freight, consigned to the appellee at Bluffton in the State of Indiana, a point beyond the terminus of its own line of railroad. It received pre-paid freight for the whole distance, and executed a bill of lading, binding itself to deliver the freight at the place of consignment. The consignee brought this action, and, averring that the goods were not delivered, sued to recover their value. There were verdict and judgment for the plaintiff.

The first charge asked by the defendant, and refused by the court, asserts the proposition, that unless the plaintiff demanded the goods at the point of destination—Bluffton, Indiana—from the carrier at that point, then there can be no recovery. This charge was rightly refused. The law does not require a useless thing; and there is testimony tending to prove that the goods were lost before they reached their destination. If that be true, a demand would have been fruitless, and need not have been made. Demand and refusal are but a method of proving a default; and that default may be proved by other methods, as well as by demand and refusal.

The rule is settled in this State, that " where a carrier receives goods directed [consigned] to a place beyond the terminus of his own route, without limiting his liability by express agreement, by the acceptance of the goods he assumes the duty and incurs the obligation to deliver them safely at the point of destination."—*M. & G. R. R. Co. v. Copeland*, 63 Ala. 219. And this is the declared rule in a majority of the best considered cases.—*Ill. Cent. R. R. Co. v. Copeland*, 24 Ill. 332; *Ill. Cent. R. R. Co. v. Johnson*, 34 Ill. 389; *So. Express Co. v. Shea*, 38 Ga. 519; *Little v. Semple*, 8 Mo. 99; *Hill Man. Co. v. B. & L. R. R. Co.*, 104 Mass. 122; *Railroad Co. v. Pratt*, 22 Wall. 123; *Weed v. S. & S. R. R. Co.*, 19 Wend. 534; *Burtis v. B. & S. L. R. R. Co.*, 24 N. Y. 269; *Quinby*

*v. Vanderbilt,* 17 N. Y. 315 ; *Lock Co. v. R. R. Co.,* 48 N. H.
339 ; *Noyes v. R. R. Co.,* 27 Verm. 110 ; *Perkins v. R. R.
Co.,* 47 Mo. 573 ; *Carter v. Peck,* 4 Sneed, 203 ; *Mosher v.
So. Express Co.,* 38 Ga. 37.

We do not understand the rule stated above to be contro-
verted in this case; but it is contended for appellant, that
there is an express exception from the operation of the rule,
embodied in the bill of lading given in this case, and that the
railroad company has brought itself within the exception.
The doctrine may be regarded as settled, that a common carrier
may by contract lessen the stern, if not severe liability, which
rested upon him by the rules of the common law. The right,
however, must not be so exercised as to be unreasonable in its
demands, nor to excuse want of proper care and diligence in
the carrier and the agencies he employs. No man can, in such
service, bargain for immunity from the effects of a want of
that degree of diligence the nature of the service demands.
And to render such limitation of liability available as an excuse
or defense, it must be shown to have been accepted, or ac-
quiesced in by the consignor. Courts scrutinize such asserted
exceptions with a watchful eye.—*Steele v. Townsend,* 37 Ala.
247 ; *S. & N. R. R. Co. v. Henlein,* 52 Ala. 606 ; *R. R. Co.
v. Man. Co.,* 16 Wall. 318 ; *R. R. Co. v. Lockwood,* 17 Wall.
357 ; *Chouteaux v. Leech,* 18 Penn. St. 224 ; *F. & Mech. Bank
v. C. Transp. Co.,* 56 Amer. Dec. 68, and note ; Note to *Cole
v. Goodwin,* 32 Amer. Dec. 495 to 507 ; Hutch. on Car.,
§§ 240 *et seq,*; Ang. on Car. §§ 220 *et seq.*

The facts of this case are substantially as follows : Meyer,
the consignor, delivered the goods to the freight agent of the
defendant company, at Cullman, one of its shipping stations.
They were directed, or consigned, to Bluffton in Indiana, and
Meyer proposed to pre-pay freight for the entire route. The
agent was not able to tell him the rate, but accepted as a de-
posit a sufficient sum of money to pay the freight when the
rate should be ascertained. He gave him no bill of lading, but
filled up one of the printed forms, making it complete except
the freight rate ; but it was not then delivered to Meyer. The
freight agent testified, that "the bill of lading was open before
plaintiff at the time " [the time it was filled up], " and he could
have known the contents, if he had desired ;" "could not say
plaintiff read the paper." Its contents were not explained to
him. On the next day, the agent, having learned the rate, in-
serted it in the bill of lading, which he forwarded, together
with the surplus of money, to Meyer, at Bluffton, Indiana.
The testimony tended to show the box of goods was safely
transported to a point beyond the defendant railroad's termi-

[Louisville & Nashville Railroad Co. v. Meyer.]

nus, and that, if lost, it must have been after it had left defendant's personal custody.

One clause in the bill of lading reads as follows: "It is further stipulated and agreed, that in case of any loss, detriment, or damage done to, or sustained by any of the property herein receipted for, during such transportation, whereby any legal liability or responsibility shall or may be incurred, that company alone shall be held answerable therefor, in whose actual custody the same may be at the time of the happening of such loss, detriment, or damage." It is contended, that Meyer could and should have read the bill of lading when it was being filled up, and that therefore he must be charged with a knowledge of its terms, and held to have acquiesced in them. On this theory, several charges were asked and refused. We think this position untenable. Possibly, if contemporaneously with the delivery of the goods to the railroad he had received the bill of lading containing such stipulation, he would be conclusively presumed to have read it, and to have acquiesced in it.—*Goetter v. Pickett*, 61 Ala. 387; *Dawson v. Burrus*, 73 Ala. 111. And this would have been no hardship, for he would then have had it in his power to reject the terms. Failing to read the contract he was accepting, might be fairly interpreted as an expression of full confidence, and an agreement to accept the terms they would offer. That is not this case. The railroad company, through its agent, agreed to accept, and did accept the freight, knowing it was consigned to a point beyond its terminus. It agreed to accept, and did accept, payment of freight charges for the entire route. These, without more, bound the railroad company, as a common carrier, to deliver the freight at the point of destination. That liability could have been limited by special contract—stipulated terms acquiesced in by the shipper. There is nothing in this record to show that Meyer was informed of any proposed limitation of the carrier's accustomed liability, nor is any thing shown which cast on him the duty of informing himself. The charges asked were properly refused.

Affirmed.