# Louisville & Nashville R. R. Co. v. Touart.

*Action against Common Carrier for Failure to Deliver Freight.*

1. *Burden of proof on carrier to show diligence.*—A common carrier relying on an exemption from liability, for loss by fire, of goods delivered to it for carriage, must show that the goods were destroyed by fire, and that such loss was without fault on its part; and where the proof shows that the goods were delivered to the carrier, 16 and 40 hours before their destruction, and fails to show that it could not have forwarded them before the fire, the plaintiff is entitled to recover.

2. *Consignee proper party, plaintiff.*—The consignee under the facts of this case, was the proper party to sue for the failure to deliver the goods, and his right to sue not being disputed by plea, the question cannot be raised for the first time on appeal.

3. *Charge misleading; when not ground for reversal.*—An instruction that contracts with common carriers are generally drawn up by themselves, and should therefore be construed most strongly against them is erroneous, but will not work a reversal when the proof shows that the plaintiff was entitled to the general affirmative charge.

APPEAL from Conecuh Circuit Court.
Tried before Hon. JOHN P. HUBBARD.
Vol. 97.

[Louisville & Nashville R. R. Co. v. Touart.]

Action for failure to deliver five bales of cotton received at Evergreen to be shipped to Mobile. Appeal by defendant. Upon the introduction of all the evidence the plaintiff requested the court to give the following written charges : (1.) "The court charges the jury that the consignee of the goods or cotton has a right to sue for their loss by the carrier notwithstanding another party may be the owner of them." (2.) "The court charges the jury that if they believe from the evidence that the cotton in question was consigned by Cobb to Touart, then *prima facie*, the title to the property is in Touart, the plaintiff, and the burden is on the defendant to overturn this presumption." (3.) "The court charges the jury that if the defendant received the five bales of cotton, for transportation, without any contract, to the contrary, it thereby undertook to carry and deliver them within a reasonable time, regardless of any unexpected or extraordinary pressure of business upon it." (4.) "The court charges the jury that contracts with common carriers are generally drawn up by themselves, and should therefore be construed most strongly against them." The defendant separately excepted to the giving of each of said charges, and also separately excepted to the court's refusal to give the following charges requested by it in writing : (5.) "If the jury believe the evidence, they must find for the defendant." (6.) "The court charges the jury that there is no proof of negligence on the part of the defendant." (10.) "The mere fact that the cotton was not shipped from Evergreen prior to the fire is not evidence of negligence on the part of the defendant."

J. M. FALKNER. and CHAS. P. JONES, for appellants. No brief on file.

FARNHAM & CRUM, for appellee, cited 44 Ala. 101 ; 50 *Ib.* 350; 64 Ill., 138; 71 Ala. 611 ; 27 Cal. 11 ; 72 Ala. 597, as to the charges given, and as to the want of diligence : 37 Ala. 247 ; 41 Ala. 488 ; 41 Ala. 644 ; *Ib.* 667.

COLEMAN, J.—The railroad was sued, for failing to deliver five bales of cotton received by it as a common carrier consigned to plaintiff at Mobile, Ala. The defendant pleaded specially the contract of shipment set out in the bill of lading, and which contained a provision that the railroad was not liable "for loss or damage on any articles of property whatever by fire, or other casualty while in transit or while in deposit or places for reception, &c." There

was no other plea, and issue was joined upon the defendant's
special plea. The evidence for plaintiff shows that the cot-
ton was received by the defendant at its depot warehouse
at Evergreen, Alabama, three of the bales, Oct. 8th, 1889,
and two Oct. 9th, 1839, and before 10 A. M. each day, and
that the cotton was not delivered at Mobile according to the
bill of lading. The evidence for the defendant tended to
show that about 2:30 A. M., on the night of the 9th of Oct.
1889, the warehouse was destroyed by fire with all its con-
tents and the cotton burned up in this fire. The trial resulted
in a verdict for the plaintiff.

All the assignments of error are based upon the charges
given at the request of the plaintiff and the refusal of the
court, to charge as requested by the defendant. The first
two charges given for plaintiff involve his right to maintain
the suit. It would be sufficient to say that this question
was not raised by the plea of the defendant, and cannot be
first raised in this court. When applied to the evidence the
plaintiff as consignee was the proper person to sue for the
loss of the cotton.—*Robinson & Ledyard v. Pogue*, 86 Ala.
261; *So. Ex. Co. v. Armistead*, 50 Ala. 351.

There was no evidence in the record of a pressure of busi-
ness at the time of the loss. The latter clause of charge
No. 3, given for plaintiff may be abstract, and tends to ren-
der the charge somewhat misleading, but we can not say
there is error in the charge.—*Ala. Gr. So. R. R. Co. v. Little*,
71 Ala. 613. It is certainly true, that in the absence of a
stipulation to that effect, and the absence of all evidence of
a pressure of business the law required of the carrier that
the goods be delivered in a reasonable time. In this respect
the charge was abstract, but we cannot see that the giving
of the charge was calculated to injure the defendant.
The fourth charge asserts that "Contracts with common
carriers are generally drawn up by themselves and should
therefore be construed most strongly against them." No
authority has been cited which sustains the legality of the
proposition, when applied to the whole contract, as asserted
in this charge. Under such a principle it would be danger-
ous for any person to reduce to writing the terms of a con-
tract to which he was to become a party. Such a rule
would necessitate the employment of third persons to pre-
pare all written contracts. It is the law based on grounds
of public policy and the relative position of the parties that
an exception inserted in a contract limiting the common law
liability of a common carrier should be strictly construed
against them.—*Steele & Burgess v. Townsend*, 37 Ala. 255;

*Atwood v. Transportation Co.*, 9 Watts, 87 ; *L. & N. R. R. Co. v. Meyer*, 78 Ala. 600. Without the exception he would be liable, and the exception to be valid must be within the meaning of the parties, reasonable in itself and not against public policy.—78 Ala. 600, *supra*.

There is nothing in the record which authorized the charge, if abstractly correct. The evidence shows that the book-keeper of the consignee filled up the contract in this instance and not the carrier, and it is further in evidence that the bills of lading were usually filled out that way at that place. The giving of charge No. 4 was calculated to mislead the jury to the prejudice of the defendant and unless the evidence shows that plaintiff was entitled to the general affirmative charge, it was error which must reverse the case.

There are some principles of law applicable to the evidence which will dispose of the charges requested by the defendant. At common law a common carrier to whom was entrusted goods for transportation was liable for all losses, not the result of the act of God, the public enemy or the party complaining. It may safely be said as a conclusion from numerous decisions that by special contract a common carrier may limit his liability and protect himself against losses by accident, and losses which are not the result of fault or negligence on his part or that of his employees. After showing the delivery of the cotton and its consignment to plaintiff at Mobile, and the failure by the common carrier defendant, to deliver the same within a reasonable time, the plaintiff's case was made out and he was entitled to recover. At common law nothing but the act of God or the common enemy or plaintiff's own fault, could relieve the defendant of the case made against him by such proof, and the burden rested on the common carrier to prove his defense. His responsibility as a common carrier is the same now as at common law, except so far as limited by special contract. If the loss resulted from some cause excepted by the contract, the carrier must plead the exception specially and his plea to present a defense must aver that the exceptionable cause was not the result of negligence on his part. It is not enough to sustain this plea to show that the loss was the result of a cause excepted by the contract; he must go further and affirmatively show, that the cause resulted without fault on his part. The contract as framed does not relieve him of this burden. This principle is clearly settled in this State. The rule is thus stated in 2 Greenleaf on Evidence, 219, 14 Ed. : "In all cases of loss by a common carrier the burden of proof is on him to show that the loss was occasioned by

the act of God or by public enemy. And if the acceptance of the goods was special the burden of proof is still on the carrier to show not only that the cause of the loss was within the terms of the exception, but also that there was on his part no negligence or want of due care."

In *Steele v. Townsend,* 37 Ala. 247, the bill of lading contained a stipulation that the carrier is not accountable for rust or breakage, and it was held that proof of injury by breakage, made out a *prima facie* case of negligence; and the *onus* was on the carrier to show the exercise of due care and vigilance on his part to prevent the injury," &c. This principle has been re-asserted in several cases since its rendition.—*Ala. Gr. So. R. R. Co. v. Little,* 71 Ala. 611; *S. & N. R. R. Co. v. Henlein,* 52 Ala. 612; *Grey's Ex. v. Mobile Trade Co.* 55 Ala. 399; *L. & N. R. R. Co. v. Oden,* 80 Ala. 38; *Chicago R. R. v. Abels,* 21 Amer. & Eng. R. R. cases, 105; *Ib.* 60 Miss, 1017; *Hull v. Chicago R. R. Co.,* 16 Amer. St. 722. We find no evidence in the record to show that by reasonable care and diligence the cotton or a part of it, might not have been shipped forward, before the breaking out of the fire. There is none to show that care and caution was exercised to protect the cotton, from loss by reason of the excepted cause.

The evidence shows that three bales of cotton were delivered for transportation about forty hours before the fire, and two, sixteen hours. During this time, the defendant held the cotton as a common carrier.—*Mt. Vernon Co. v. Ala. G. S. R. R. Co.,* 92 Ala. 298. The defendant failed to introduce any evidence to show why this cotton was not shipped during the period after its delivery and before the fire. Whether there were freight trains passing the depot, and if so, why the cotton was not shipped, and, if no trains passed, why so long a period intervened without trains, are questions not touched by the evidence. In fact, the defendant seems to have relied upon the assumption, that it was incumbent upon the plaintiff to establish affirmatively, that the defendant was derelict in duty in this respect. To so hold would be to convert the liability of the defendant into that of mere warehousemen or common bailees for hire. The exception in the contract does not have this effect. The defendant received the cotton as a common carrier, and his liability is that of a common carrier—limited, it is true, by the contract, but not so as to relieve him of the burden of proving that the loss occurred notwithstanding the use of due care and diligence to prevent it. In the case of the *Central R. R. & Banking Co. v. Smitha & Christian,* 85

[Decatur, Chesapeake & New Orleans Railway Co. v. Crass.]

Ala. 52, this court held that as a matter of law, the detention of a car load of horses for twelve hours at Smithville, was not negligence, but the facts of that case show that the shipper was notified that the car would lie over all night at Smithville, but that they would be, and the proof shows, were shipped by the first train. We would not be understood as declaring that sixteen hours or forty hours was as a matter of law, an unreasonable delay. We simply declare that in the absence of all proof of surrounding circumstances the court cannot say, affirmatively, it was a reasonable time, and failing to offer some proof to this effect, it left plaintiff's *prima facie* case unrebutted, and he was entitled to the affirmative charge.

The same reason applies to the fire. No proof was offered to show whether the warehouse was, or was not, so situated or constructed as rendered it liable to take fire from passing cars or other causes, or whether the defendant had no reasonable grounds to apprehend incendiarism, and that under the circumstances it was not negligence, not to keep a guard out during the night. The defendant being a common carrier did not meet its responsibility by simply showing the destruction of the cotton by fire, and that it did not know what caused it. At common law, as common carrier, it insured against accident. Under its contracts it may exempt itself from loss by accidental fires, but to do so, it must prove, as we have seen, not only the loss by the accident excepted in its contract, but that the loss occurred notwithstanding reasonable care, to guard against the accident.

We think under the evidence that the plaintiff was entitled to the general charges, and whatever error there was in giving charge No. 4, it must be held error without injury.

Affirmed.