## Case No. 4,248.
### EARNEST v. EXPRESS CO.
[1 Woods, 573.][1]

Circuit Court, N. D. Georgia. Sept. Term, 1873.

E. N. Broyles and Reuben Arnold, for the motion.

N. J. Hammond, contra.

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

Before WOODS, Circuit Judge, and ERSKINE, District Judge.

WOODS, Circuit Judge. The evidence upon the trial as appeared by the brief thereof agreed to by counsel, established these facts. The plaintiff was a jeweller in the city of Atlanta in the habit of sending to and receiving from New York City valuable packages by express. He was furnished by the express company with a book containing the blank receipts of the company. On the 8th of February, 1869, he went to the agent of the defendant in Atlanta, with a small package containing four diamond rings valued at $735. The package was a paper box about three inches long by two and a half wide and was covered with brown paper and directed to a firm in New York. There was no value stated upon the package nor other mark to indicate its value. The plaintiff when he delivered the package, to the defendant's agent presented one of defendant's receipts which he had taken from the book furnished by the express company and had filled up in his own hand. This receipt read as follows:

"Read this receipt. Southern Express Company. Express forwarders. Domestic bill of lading. Atlanta, February 8, 1869. Received of E. E. Earnest, package valued at (not given) dollars, and for which amount the charges are made by said company, marked S. & M. N. Strauss, New York."

Then followed several printed stipulations among which were the following: "It is a part of the consideration of this contract and it is agreed that the said express company are forwarders only, and are not to be held liable or responsible for any loss or damage to said property while being conveyed by the carriers to whom the same may be by said express company intrusted or arising from the dangers of railroads, ocean or river navigation, steam, fire in stores, depots or in transit, leakage or breakage, or from any cause whatever, unless in every case the same be proved to have occurred from the fraud or gross negligence of said express company or their servants, unless specially insured by it and so specified on this receipt, which insurance shall constitute the limit of the liability of the Southern Express Company in any event; and if the value of the property above described is not stated to the shipper at the time of shipment and stated in the receipt, the holder hereof will not demand of the Southern Express Company a sum exceeding fifty dollars for the loss or damage to each package herein receipted for." The receiving agent of the defendant asked the plaintiff the value of the package, and he refused to give it. The charge upon the package for transmission to New York was one dollar. If the value had been fixed, there would have been an additional charge

of one-half of one per cent., amounting to three dollars and a half and upwards. The plaintiff had been frequently informed by defendant's agent of this rule in reference to additional charges on value. The contents of the package and its value remained unknown to defendant's agent. The defendant's agent upon the refusal of plaintiff to make known the value of the package, stated to plaintiff that the express company would not be liable for more than fifty dollars on the package unless he fixed a value, which proposition the plaintiff disputed and claimed the law to be otherwise; whereupon his attention was called to the clause in the receipt bearing upon that point.

Valued packages delivered to defendant for transportation are put in sealed pouches and these pouches in an iron safe, and the messenger receiving the pouch receipts for it to the one delivering it. Unvalued packages for convenience merely and not for security, are placed in a wooden box, and there is no rule of the company to prevent throwing them upon the floor of the car. They are delivered from one messenger to another, the latter simply receipting the way bill and receiving the goods in bulk. The package in question was safely carried as far as Dalton, Georgia, as an unvalued package. It was there delivered to a second messenger to be transferred with other express freight to another car. When the second messenger . before starting examined the packages transferred to his own car to see if they were all there, this package was missing. There was some testimony tending to show that in the transfer of the express freight from one car to another, this package was stolen by one Green, who assisted in making the transfer. Green was not in the employ of either the railroad or express company, but was the .servant of the express agent at Dalton, and sometimes assisted in transferring heavy express freight from one car to another. The express messenger at Dalton who delivered the package and the one who received it, both testified that they were careful and diligent in the discharge of their duty touching this package, supposing it to be one not worth more than fifty dollars, and there was no evidence to rebut this proof except the fact of the loss of the package. The jury returned a verdict of fifty dollars for the plaintiff, and the plaintiff now moves for a new trial on the ground that upon the facts the verdict should have been for the value of the diamonds.

A motion for a new trial is addressed to the sound discretion of the court, and if upon a review of the case the court is of opinion that substantial justice has been done, and a correct result reached by the verdict, a new trial will not be granted, even though there may have been error in the progress of the trial. Proceeding upon this principle, we have considered the case as presented by the agreed facts, to determine whether the verdict is right or wrong, and have reached the conclusion that it is right and ought not to be disturbed. The modern doctrine both in England and this country is now well settled, that a common carrier may by express contract, or by notices brought home to the knowledge of the owner of the goods before or at the time of delivery to the carrier, if assented to by the owner, limit his common law liability. "As the extraordinary duties annexed to his employment concern only in the particular instance the parties to the transaction, involving simply rights of property, the safe custody and delivery of the goods, we are unable to perceive any well founded objection to the restriction or any stronger reasons for forbidding it, than exist in the case of any other insurer of goods to which his obligation is analogous and which depends altogether upon the contract between the parties. The owner by entering into the contract virtually agrees that in respect to the particular transaction the carrier is not to be regarded as in the exercise of a public employment, but as a private person who incurs no responsibility beyond that of an ordinary bailee for him, and answerable only for misconduct or negligence." Nelson, J., in New Jersey Nav. Co. v. Merchants' Bank, 6 How. [47 U. S.] 382. See, also, Sager v. Portsmouth, S. & P. Ry. Co., 31 Me. 228; Bean v. Green, 12 Me. 422; Cooper v. Berry, 21 Ga. 526; Dorr v. New Jersey Steam Nav. Co., 1 Kern. [11 N. Y.] 485; Atwood v. Reliance Transp. Co., 9 Watts, 87; Verner v. Sweitzer, 32 Pa. St. 208; Parsons v. Monteath, 13 Barb. 353; Moore v. Evans, 14 Barb. 524. It is generally held, however, in this country that a common carrier cannot, by special notices brought to the knowledge of the owner of the goods or by contract even, exempt himself from the duty to exercise ordinary care and prudence in the transportation of goods. Cole v. Goodwin, 19 Wend. 251; Atwood v. Reliance Transp. Co., 9 Watts, 87; Camden & A. R. Co. v. Baldauff, 16 Pa. St. 67.

According to the agreed facts in this case, the stipulations of the receipt were brought distinctly to the knowledge of the plaintiff. After presenting the receipt filled out by his own hand he was informed by the agent of defendant that, unless he stated the value of the package, the defendant would only be liable for $50. This the plaintiff disputed, when the agent called his attention specially to the provision to that effect in the receipt. Instead of demanding that such stipulation be stricken out, he accepted the receipt as it stood. According to the authorities, this amounted to a contract between the plaintiff and defendant.

The point urged by the plaintiff is this: The jury, having found a verdict in his favor for fifty dollars, must have been satisfied either of the negligence of the defendant, or that a servant of the defendant had converted the

goods, and that the verdict should therefore have been for the full value of the package. In other words, that if the defendant cannot, by contract, exonerate itself from liability for its negligence, neither can it contract that in case of negligence it shall be liable for less than the real damage sustained. We do not think it follows, from the finding of the jury, that the verdict should have been for the full value of the package. The negligence found by the jury was negligence in handling a package supposed to be worth not more than fifty dollars, and, in effect, represented to be of that value, and no more. While it is conceded that a common carrier cannot protect himself, by contract, from liability to pay full damages in case of negligence, yet he may, by contract, require a full disclosure of value, and his case is to be judged just as if the value represented were the true value. What would be diligence, in the care of an unvalued package, might be gross negligence in the care of one worth a thousand dollars. The authorities sustain these views. In the case of Farmers' & Mechanics' Bank v. Champlain Transp. Co., 23 Vt. 186, the court said: "But we regard it as well settled, that the carrier may, by general notice brought home to the owner of the things delivered for carriage, limit his responsibility for carrying certain commodities beyond the line of his general business, or he may make his responsibility dependent upon certain conditions; as having notice of the kind and quantity of things deposited for carriage, and a certain reasonable rate of premium for the insurance, paid beyond the mere expense of carriage."

So Mr. Greenleaf, in his treatise on the Law of Evidence (volume 2, § 215), declares: "It is now well settled that a common carrier may qualify his liability by a general notice to all who may employ him, of any reasonable requisition to be observed on their part in regard to the manner of delivery and entry of parcels, and the information to be given to him of their contents; as, for example, that he will not be responsible for the value of goods above a certain sum, unless they are entered as such and paid for accordingly." In Batson v. Donovan, 4 Barn. & Ald. 21, the court held that "the plaintiff, by delivering a box containing bills, checks and notes to the value of £4,072, without intimating that the contents were valuable, when he knew the carrier expected a premium for insurance in such cases, was guilty of such fraud and deception as to preclude a recovery except for such gross neglect as would be reprehensible if the parcel had been of less value than £5, the limit named in the carrier's notice." See also American Exp. Co. v. Perkins, 42 Ill. 458; Relf v. Rapp, 3 Watts & S. 21.

If public policy allows a common carrier to make such a contract, it must be enforced. Common carriers have a right to demand good faith and fair dealing from those who do business with them. It strikes the common sense as a gross injustice that a party who, to avoid paying the regular charges therefor, conceals the value of a package, and thereby throws the carrier off his guard, and induces him to treat the package as of small value, whereby it is lost, should recover its full value when he has expressly agreed, in case of loss, that he would only demand a stated sum, much less than the true value. That is the case here. It is evident from the facts that if the value of the package had been stated, it would not have been lost. It would have been put in a pouch, and the pouch in an iron chest. The package, being unvalued, was supposed to be of little value, and was treated as such by the carrier. He was induced to relax the care and vigilance he would have used had the package been marked with its true value. By reason of that relaxation, the package was lost. Its loss is the direct consequence of the conduct of the plaintiff in refusing to give its value in order that he might escape the payment of full charges. He has agreed that in case of loss his compensation therefor should be fifty dollars, and he is bound by his contract. There is a plain, well understood contract between these parties. If such contracts are ever to be enforced, we see no reason why this one should not be. We think the verdict of the jury does substantial justice between the parties, and ought to stand. The motion for new trial will therefore be overruled.