THE CINCINNATI TRACTION CO. v. SCHMIDT, ADMX.

*Negligence—Question for jury—Duty of street car motor-*
*man to keep lookout—Reversal justified only when verdict*
*manifestly against weight of evidence—Charge to jury—*
*Last clear chance—Instruction thereon not given by read-*
*ing petition to jury, when—Verdict for death of child not*
*excessive, when.*

1. Where and in what direction motorman of car injuring
   child should have looked *held* for jury.
2. Verdict must be manifestly against weight of evidence to
   justify reversal thereon.
3. Verdict finding motorman's negligence in failing to keep
   proper lookout was proximate cause of death of child *held*
   not manifestly against weight of evidence.
4. Petition alleging that motorman failed to check speed of
   street car, after observing deceased's dangerous position,
   which court read to jury as informatory of allegations of
   such petition, *held* not to constitute charge on last clear
   chance doctrine, where other language of charge applied
   to negligence as well as last chance.
5. $5,000 for death of healthy, vigorous, and precocious eight
   year old girl *held* not excessive.

(Decided January 25, 1926.)

ERROR: Court of Appeals for Hamilton county.

*Mr. Leo J. Brumleve, Jr.,* for plaintiff in error.
*Messrs. Bettman, Riesenberg, Cohen & Stelten-*
*pohl,* and *Mr. Clarence F. Denning,* for defendant
in error.

HAMILTON, J. The action is for damages for
wrongful death. Dorothy Schmidt, a child of eight
years of age, was crossing Harrison avenue in the
vicinity of De Breck avenue. She was going diag-
onally across the street toward a stop of the trac-

tion company, and, in crossing the tracks of the traction company, was struck and killed by one of its cars.

The action is prosecuted by the administratrix of the deceased. The jury returned a verdict for $7,000, which was reduced by the trial court to $5,000, and judgment for that amount was entered. The traction company prosecutes error to this court, asking a reversal of the judgment.

There are several specifications of error, but the main point, and the serious question, goes to the weight of the evidence.

The amended petition in the case charges negligence in that the motorman failed to keep a proper lookout; failure to stop his car in time to avoid the accident; and the negligent construction and operation of the fender.

The evidence in the case, however, is substantially directed to the charge of negligence in failing to keep a proper lookout, in order to avoid injuring persons on the street, and that the failure to so do was the proximate cause of the injury.

Plaintiff introduced two important witnesses, but one of whom, Mary Butcher, was an eyewitness to the whole of the accident. The second witness, O'Rear, saw the latter part of the accident.

The evidence, as adduced through the witness Mary Butcher, was that she was standing on the southwest corner of Harrison and De Breck avenues (Harrison avenue runs east and west, and De Breck avenue comes into it from the south); that while standing on the corner, she noticed the little girl running up the east side of De Breck avenue toward Harrison avenue; that she saw the street car in question coming about a car and a half length

from De Breck avenue, going west on Harrison avenue; that as the street car approached the intersection of De Breck avenue she noticed the motorman looking across the street at her, or in her direction, and that he continued to so look until the accident happened; that the deceased stopped on the corner of De Breck and Harrison avenues to let an automobile, going east toward the city, pass; that, after the machine had passed a few feet, the little girl started to run across the intersection diagonally toward the stop pole on the north side of Harrison avenue; that the witness had glanced to the west to see if her car was coming, and, on looking back, saw the deceased in danger near the front of the car, and started to shout to her, but that it was too late; that the little girl was struck by the front of the car, and went under it. She further testified that there was no other machine in the street at the time that would obstruct the view.

O'Rear testified that he came around the corner of the building at the southeast corner of De Breck and Harrison avenues, and saw under the front of the car a bundle rolling. He thought it might be paper or a dog; that the car rolled it a ways, then passed over it, still rolling, until the bundle was back of the front truck. He then saw it was a child. He testifies that he went out and called to the motorman not to start the car, that there was a child under his car, and that thereupon the motorman got down and came around the end of the car, making the exclamation: "My God, I have run over a child."

All of this evidence would tend to show that the motorman at no time saw the child.

The defense, however, offered the motorman as a witness. He testified that traffic was heavy at this place on the morning and at the time in question; that he saw a little child dart out in *front* of a machine, which statement he later changed to *behind* a machine, dart across the street into the front left-hand side of the street car, and disappear under the car.

The evidence is clear that the motorman was not keeping a lookout ahead of the car. He says he saw a little girl at the left of the car. Mrs. Butcher testified he was looking across the street toward her. The street car was moving very slowly, and about to come to a stop at the stop pole in question. There was no question of excessive speed or failure to give a warning in the case.

We cannot say as a matter of law just how and where and in what direction the motorman should have looked. This was a question for the jury. The important question then is, Was the looking of the motorman across the street toward the southwest corner, and the failure to keep a lookout in other directions, the proximate cause of this injury?

It would be reasonable to infer from the evidence that no looking, or failure to look, on the part of the motorman would have prevented the injury. On the other hand, it might be inferred that, had the proper lookout been kept by the motorman, he might or should have seen the little girl running across the street toward the front of his car, and might reasonably have anticipated that, child as she was, she might run into peril, in which event ordinary care would have required him to stop his car under the circumstances.

The testimony given by the motorman is overwhelmingly contradicted, not only by the testimony of the witnesses Butcher and O'Rear, but by the physical facts as well. The child was between the rails, and was not struck by the wheels of the truck. She was rolled under the car from the front, and rolled to her death under the motor box. It is inconceivable that even a child of that age would run into and under the car in the manner stated by the motorman.

Under this state of the facts, it is not surprising that the jury apparently did not give credit to the defendant's witness, the motorman, who was necessarily the main witness for the defense.

Enough has been said to show that the weighing of the evidence in this case is difficult. It would be easy to disagree with the verdict of the jury. The rule, however, requires that, before a reversal on the weight of the evidence, we must find the verdict to be manifestly against the weight of the evidence, and under the state of the record we do not feel justified in so holding.

The second specification of error goes to the general charge. The complaint is made that the court in the general charge injected the question of the doctrine of last clear chance, where there was no evidence in the case to present that doctrine.

The petition did plead the doctrine of last clear chance, but it is doubtful whether the court intended to submit the question. There is some language in the charge that tends to present that doctrine to the jury, under the charge. Had the motorman not testified that he saw the child at all times, there might be some reason to object to the question, if it was injected in the case. If the po-

sition of the child was as suggested by the testimony of the witness Butcher, and the motorman saw her at all times, there would be the question of last clear chance. However, the charge complained against does not present the doctrine as it is known to the law. The part of the charge complained against is as follows:

"That the defendant through its servant and agent was negligent in that it did not stop its car in time to avoid striking said child, who was on the track in a helpless and dangerous position, and that defendant failed and neglected to stop said car or to check its speed in order to avoid striking said Dorothy Schmidt after he observed her position."

This was read by the court from the amended petition, and was but informatory of the allegations thereof. It was not given as a part of the charge on the law of the case. The other language in the charge applies to the question of negligence as well as last chance.

Counsel for the traction company says in the briefs that at no time was the deceased in a dangerous position, and states further that it was undisputed that she ran into the forepart of the car from behind the machine. This is not a fair statement of the evidence in the record. The evidence is that she was struck by the front end of the car and was rolled under. She may have been in a perilous position in time to have stopped the car. The matter complained against in the charge of the court on this question could not have misled the jury under the facts presented.

There are some objections made to some of the language used in the general charge on other points,

but the objections are to excerpts taken from the charge, and lack substance.

Under the facts, the charge of the court fairly presented the issues to the jury and the law applicable thereto.

Complaint is made of the giving of plaintiff's special charges 1 and 3. Special charge 1 goes to the question of equal rights on the street, and the requirement of the exercise of ordinary care on the part of the motorman to control his car so as to avoid accidents.

Charge No. 3 goes to the question of ordinary care on the part of a child of tender years.

There was no error in giving these charges.

Plaintiff in error urges that the verdict of the jury is excessive. The child was a precocious one, a student of elocution and fancy dancing, and had given some exhibitions of her talent. She was a healthy vigorous child. This court has sustained a verdict in an amount approximating the judgment in this case where a boy four years of age was killed. Larger verdicts have many times been upheld, and we see no reason to disturb the amount of the verdict.

All the specifications of error, save that going to the weight of the evidence, were of a technical nature of minor importance, and could not have affected the verdict.

*Judgment affirmed.*

BUCHWALTER, P. J., and CUSHING, J., concur.